[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of Danbury. Many of the facts that give rise to this action are not in dispute.
The plaintiff and the defendant, whose maiden name is Christine Gloenendaal, were married at Moffet, Scotland, on April 11, 1995. The defendant has resided continuously in the State of Connecticut for at least one year immediately prior to the date of the commencement of this action. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There is one minor child, issue of the marriage, Fiona Grace McLennan, born July 21, 1995. No other minor children have been born to the defendant wife since the date of marriage of the parties. Neither the parties nor the minor child has received any form of public assistance.
The plaintiff is forty-five years old. He presently lives in Denver, Colorado, and has resided there for approximately one year. He is in good health. He presently works for Aspet Pet as a sales manages for the eastern United States. His annual salary is $90,000. He started his present employment on February 2, 1996. He went to Denver in April of 1996, which was required for his job.
The plaintiff and his mother started Bardwyn Productions in late 1994. It was funded by using $25,000 from his mother's pension and other funds from his mother that came from the refinancing of the mortgage on the Weston, Connecticut, property that his mother had owned. He has not had any involvement with running Bardwyn since he started his job with Aspet Pet in February of 1996. CT Page 7815
In 1997, the plaintiff received $718.63 total income from Bardwyn.
In 1996, commissions were paid to Bardwyn Associates totalling $19,050. There was a loan balance of $10,000, effective April 19, 1996, that was reduced to $5500 by November 25, 1996. In addition to the $19,050, an additional $868 was paid for consulting fees to Bardwyn Associates in December of 1996, plus $600 in January of 1997. The 12-1/2 percent consulting fee is paid by Maude Brown Associates, Inc. to Bardwyn Associates.
Of the approximate $13,000 that Bardwyn earned as commissions in 1996, the plaintiff received approximately $3000 of that sum.
The plaintiff's financial affidavit shows two life insurance policies, one in the face amount of $250,000, and a second in the face amount of $130,000 with a cash surrender value of $958.56. The plaintiff is in agreement that the $250,000 policy should name the minor child as beneficiary until the child reaches age eighteen.
The fair market rental value of the cottage and the family home is $900 monthly. The rental value of the main building at the family residence is approximately $1500 monthly. The plaintiff is presently paying $800 per month to rent his apartment in Denver, Colorado. His monthly payment on the mortgage and taxes at the family residence is $1872. The plaintiff provides health insurance that covers himself, the defendant and the minor child at a cost of $165 monthly. His financial affidavit shows an expense of $491.50. That is for a health policy that is presently not in existence. His correct monthly cost for health insurance is $165 and not $491.50. The plaintiff has borrowed money from his brother and mother during the pendency of the divorce in order to pay the bills on the family home, including paying $650 monthly to the defendant. Those loans are not shown on his financial affidavit.
The plaintiff vacated the family home the last week in March of 1996 and went to Denver, Colorado. Since the defendant moved to Denver in April of 1996, he has made the monthly mortgage payments, electric payments, garbage payments, oil heat payments, maintenance payments and $650 monthly support.
Prior to moving into the family home, the plaintiff's mother CT Page 7816 lived in her own home in Weston, Connecticut. She vacated her home in August of 1995 when the family residence was purchased. She had purchased her property in Weston, Connecticut, in 1966 for $27,500. She lived there from 1966 until August of 1995. There were numerous improvements made to her residence in Weston, Connecticut. In about 1993, she was desirous of making major improvements to her home in order to bring it up to standard for resale. She applied to three banks for a mortgage and was turned down except for a mortgage in the amount of $10,000 which was insufficient. She then quitclaimed the home to the plaintiff on September 24, 1993. He then obtained a $100,000 mortgage that was used in part for major house remodeling to the Weston home and in part was invested into Bardon Products, a company that his mother had founded with the plaintiff. The present family home located at 29 Poorhouse Road, Newtown, Connecticut, was for sale. The Weston, Connecticut, home was sold in July of 1995 for $385,000. Part of the net proceeds was used towards the down payment on the Newtown main home and part of it was used to remodel the barn at the Newtown property. The entire net proceeds was invested into the Newtown property. Work on the barn commenced at or about that time. Title to the Newtown property is in the name of the plaintiff and the defendant only. The plaintiff's mother claims to have an ownership interest in the Newtown property. She is not a party to the present dissolution action. She is not paying rent for the use of the living facilities in the barn. The cottage has been vacant since the end of April of 1997. It is expected that it could be rented shortly. The rental income from the cottages is shown on the plaintiff's financial affidavit.
After the plaintiff and the defendant met in July of 1994, the plaintiff told the defendant that he considered the Weston, Connecticut, property to belong to his mother. Prior to the time the parties married, the plaintiff explained the contents of Plaintiff's Exhibit 3 to the defendant. Plaintiff's Exhibit 3 was signed approximately one month after the plaintiff's mother quitclaimed the Weston, Connecticut, property to him.
When the Weston property was sold for $385,000, it had a mortgage balance of approximately $121,000. A real estate commission was paid of 6 percent. The net amount received from the sale was approximately $245,000. The plaintiff's financial affidavit shows that he owns 300 shares of Digital Sound Corporation. They have a fair market value of $3425.67. He owned those shares prior to his marriage to the defendant. Although not shown on his financial affidavit, the plaintiff is a beneficiary CT Page 7817 of the Augusta Clark Estate. The decedent was his mother's godmother and died approximately fifteen years ago. The plaintiff will receive $50,000 if he is alive in December, 1998. He will not receive any part of the $50,000 is he is not alive in December of 1998.
The plaintiff's mother, who is seventy-one years old, has lived at the family home for approximately two years. The family residence consists of a main home, a rental cottage, and a barn. She has lived in the barn for approximately the past nine to ten months. Prior to that time, she lived in the basement of the main house.
The purchase of the Newtown property was subject to the plaintiff's mother's approval. The defendant put up the $12,325 binder from her funds towards the contract for the purchase of the Newtown property and that money was paid back to her within approximately sixty days on September 8, 1995. The plaintiff, the defendant, their minor child and the plaintiff's mother moved into the Newtown property on August 26, 1995, with the plaintiff's mother living in the basement. The plaintiff and the defendant applied for a mortgage in connection with purchasing the Newtown, Connecticut, property. At the time of the mortgage application, the defendant had $18,221 in a Westport, Connecticut, bank. The plaintiff had $21,293 in a Westport, Connecticut, bank. The defendant also had $9398 in a separate Westport, Connecticut, bank. The defendant and the minor child presently reside in the main home at the Newtown family home.
The mortgage that the parties obtained when the family home was purchased, was used for improvements to the home.
The mortgage loan application was completed between April, 1995 and May of 1995. At the time of the mortgage application, the defendant had a liability to First Interstate for a credit card with a balance of $2944.
The court finds that the fair market value of the family residence is $400,000, and that it has a mortgage of $203,150, and an equity of $196,850.
When the parties met, the defendant had approximately $33,000 in savings. She now has approximately $10,700 in savings. She spent an excess of $22,000 of her savings during the marriage. CT Page 7818
The defendant used her savings in part for medical expenses for the minor child, furniture for the child, household and food expenses. Other expenses that she has spent money on include clothing, toys, dental expenses, car expenses, phone, and her own personal needs. The defendant's financial affidavit, dated May 8, 1997, shows that she has a pending lawsuit as a result of an automobile accident. The defendant was a passenger in an automobile and was injured. She does not have any opinion as to value of that claim. Her financial affidavit shows weekly expenses for telephone, food, cable, toys and books, magazines and tuition, and babysitting expenses. Those are all projected expenses.
When the defendant met the plaintiff in July of 1994, she was a school teacher in Southport, Connecticut, with a salary of approximately $31,000 per year.
She will have a better opportunity to enter teaching in a Montessori private school. The salary range at the present time in the Montessori school system is in the $20,000 to $25,000 annual range.
The plaintiff needs one additional course in order to be eligible to receive her master's degree. She is certified to teach at a Montessori private school for ages three through six.
The defendant is presently selling books and toys. She has made approximately $40 in the last thirty days.
She has not attempted to return to teaching since the minor child was born as it is her intention to wait until the child is in kindergarten before going back to work. The child will be in kindergarten in September of 2000.
The parties are in dispute as to the cause of the breakdown of the marriage. From the evidence presented, the court finds that each party is equally at fault for the breakdown of the marriage.
This court has considered the provision of § 46b-82
regarding the issue of alimony, and has considered the provision of § 46b-81 (c) regarding the issue of property division, and has considered the provision of § 46b-56 regarding the issue of custody and visitation, and has considered the provision of § 46b-84 and the child support guidelines regarding the issue CT Page 7819 of support, and has considered the provision of § 46b-62
regarding the issue of attorney's fees. The court enters the following orders:
ORDERS
A. BY WAY OF DISSOLUTION
1. The marriage between the parties is dissolved, and each party is declared to be single and unmarried.
B. BY WAY OF ALIMONY
1. The plaintiff is ordered to pay the defendant alimony in the sum of $350 per week.
2. Alimony is to terminate on the earliest of the following events: (a) the death of the plaintiff; (b) the death of the defendant; (c) the remarriage of the defendant; (d) September 1, 2000. The minor child will be in kindergarten by this time, and the defendant will no longer have the need for alimony as she will be able to be gainfully employed. The court finds, in accordance with the provision of § 46b-82, that it is in the best interests of the minor child that the defendant be allowed to remain at home until the minor child enters kindergarten.
3. Alimony is non-modifiable as to term.
4. The provision of §§ 46b-86 (a) and 46b-86 (b) are applicable.
5. The plaintiff is to provide health insurance for the benefit of the wife. This obligation terminates when alimony terminates.
6. The alimony payments are to commence the day after the defendant vacates the family residence and has quitclaimed her interest in the family residence to the plaintiff.
C. BY WAY OF CUSTODY AND VISITATION
1. The parties entered into a stipulation, dated May 27, 1997, regarding the issues of custody and visitation. The court approves of that stipulation and enters orders in accordance with the stipulation. CT Page 7820
D. BY WAY OF SUPPORT
1. The plaintiff is ordered to pay to the defendant support in the amount of $252 per week. The court finds the child support guidelines, provided by the plaintiff, is the correct way to calculate support.
2. The plaintiff is to provide health insurance for the benefit of the minor child. The parties have to divide equally any uncovered or unreimbursed health expenses.
3. The plaintiff is ordered to name the minor child as beneficiary of his $250,000 life insurance policy until the child reaches age eighteen.
E. BY WAY OF PROPERTY ORDERS
1. The court orders that the plaintiff pay the liabilities shown on his financial affidavit, and hold the defendant harmless therefrom.
2. The court orders that the defendant quitclaim to the plaintiff all of her interest in the family residence by August 30, 1997. The defendant has the right to exclusive use of the main dwelling at the family residence until August 30, 1997. Simultaneously with the defendant vacating the family residence, the plaintiff is to pay to her the sum of $5000. He is to pay her an additional $30,000 at the rate of $700 per month, commencing one month after she vacates the family residence, and continuing monthly thereafter without interest. In the event any payment is more than fifteen days late, then interest at the rate of 10 percent per annum shall run on the unpaid balance. The $30,000 is to be secured by a promissory note and mortgage deed on the family residence to be executed by August 30, 1997. In the event the residence is sold, the full unpaid balance shall be due and payable. In the event any payment is more than fifteen days late, then the full unpaid balance shall become due and payable. The plaintiff is to make all reasonable efforts to remove the defendant from liability under the mortgage deed.
3. The 1989 Jeep, shown on the plaintiff's financial affidavit, with a value of $2500, and a loan balance of $2241.50, and an equity of $258.50, is awarded to the plaintiff. CT Page 7821
4. All bank accounts, shown on the plaintiff's financial affidavit, as well as all stocks and bonds, shown on his affidavit, are awarded to the plaintiff.
5. The cash surrender value in the life insurance policy, shown on the plaintiff's financial affidavit, is awarded to the plaintiff.
6. All of the plaintiff's interest in Bardwyn, Inc. is awarded to the plaintiff.
7. The 1992 Volvo, shown on the defendant's financial affidavit, with a fair market value of $13,000, and no loan balance, is awarded to the defendant.
8. All of the jewelry in the possession of the defendant is awarded to the defendant.
9. The bank accounts, shown on the defendant's financial affidavit, are awarded to the defendant.
10. All of the defendant's interest in the lawsuit shown on her affidavit is awarded to the defendant.
11. All of the plaintiff's interest in the Augusta Clark estate is awarded to the plaintiff.
F. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of either party.
G. MISCELLANEOUS ORDERS
1. Counsel for the plaintiff is to prepare the judgment file within thirty days and send it to counsel for the defendant for signature and filing.
2. The parties have to exchange copies of federal and state income tax returns within thirty days after such returns have been filed by certified mail, return receipt, or registered mail, return receipt, for so long as there is an outstanding alimony and/or support order.
Axelrod, J. CT Page 7822